The opinion of the Court was delivered by
'YVardlaw, J.
This Court concurs in the decretal orders made by the Chancellor, and in the reasonings by which he has sustained them.
The thirteenth clause of the will of James B. Eichardson, taken as a whole, makes plain the intention of the testator to give to the executors, as trustees, an estate in the residue until both of his .brothers were dead. “During the joint lives of my two brothers” must be construed to mean during the two lives of my brothers, or during the lives of my two brothers joined together ; that is, according to subsequent expositions in the same clause, until the time when, “ at the death of my two brothers,” the nephews shall take the remainder.
There is nothing in the cases mentioned in the decree, nor in other cases that have been cited here, nor in the learning applicable to joint tenants and tenants in common, nor in the scheme of the will, nor in the motives which have been attributed to the testator, that would warrant a decision, either that the estate of the trustees was determined by the *481 death of one brother, or that cross-remainders between the two brothers were raised by implication, so that the moieties of both are now united for the benefit of the survivor.
So much we say, in reference to the points considered by the Chancellor, and we deem it unnecessary to add any thing more to the observations he has made upon those points. But, for the appellant, views, opposed to the decree, have been drawn from the somewhat abstruse doctrines relative to estates pur autre vie in incorporeal hereditaments, and have been pressed upon the attention of this Court with so much earnestness that some answer to them is required.
A summary of the argument is this: the interests given by the will to the two brothers are estates pur autre vie in an incorporeal hereditament, and, therefore, are freehold ; at common law-an executor could not intermeddle with a freehold ; the twelfth section of the Statute of Frauds (29 Chas. II., c. 3, A. D. 1672, 2 Stat. 527) relates only to those estates pur autre vie of which there may be a special occupant; there •can be no special occupant of an incorporeal hereditament; neither the statute 14 Geo. II., c. 20, A. D. 1728, nor the statute 1 Yict. c. 26, § 3, A. D.T887, has been made of force here, nor any equivalent legislation adopted; therefore the interest which John Peter Bichardson, the decedent of the two brothers, had under the will of James B. Bichardson, cannot have been transmitted to the executors of the said John Peter.
The establishment of the conclusion aimed at by this argument would not transfer the interest of John Peter to the surviving brother, Thomas C., but would cause it to revert to the heirs of James B. as undevised realty. 2 Bac. Ab. 562; Estates for Life and Occupancy, B. 1; Doe vs. Robinson, 8 Barn. & C. 296, A. D. 1828.
But some important propositions in the argument are inadmissible. Whether there could be a special occupant of an estate pur autre vie in an incorporeal hereditament, and *482 whether, under a grant to the grantee and his executors, his executor could be such special occupant, are questions that have been much contested in the English Courts; and the better opinion is, that both were there decided in the affirmative before the above-mentioned statute of 1 Vict. was passed. See Ripley vs. Waterworth, 7 Ves. 424, A. D. 1802, and cases there cited by Lord Eldon; Hodgson vs. Gonthwaite, Willis, 500, A. D. 1744. But these questions are not now directly before us: neither of them is here involved except so far as its decision may affect the construction of the twelfth section of the Statute of Frauds. The gift here made by the testator, James B. Bichardson, to each of his brothers, was, as we have above decided, a grant for two lives — one being the life of the grantee; but was to each without addition of heir, executor, or administrator. There was then no special occupant in this case.
The gift was to each brother, of a trust in the balance of the net proceeds of real and personal estate, after payment of specified annuities. The trustees were to manage the estates,' pay expenses and annuities, and divide the balance of net proceeds between the two brothers equally. The estates were not charged; no right of distress, not even of entry, passed to the brothers. The responsibility of the trustees, and the remedy against them, were merely personal; and the right of each brother was merely a right to receive annually from the trustees an uncertain sum of money. It would then be no departure from the general tendency of American law to hold that the interest given to each brother was not an incorporeal hereditament, subject to the rules which govern real estate, nor even, what Lord Hardwicke called a personal inheritance, (Stafford vs. Buckley, 1 Ves. Sen. 178; see also Aubin vs. Daly, 4 Barn. & Ald. 59; 1 Bro. P. C. 327,) where an incorporeal right, in most respects treated as a chattel was granted to a man and his heirs ; but that it was only an incorporeal right in personalty, which is mere personal prop *483 erty, transmissible and distributable as such, like the right to receive dividends o'f stock or to receive money on an ordinary chose in action.
As, however, a portion of the net proceeds now in question must come from lands, and the whole may be said to savor of the realty, (Co. Litt. 20,) we will consider the case as it has been presented, and treat the interest of each brother as an incorporeal hereditament, and as subject, being a trust, to the same rules of descent and conveyance which would apply to it if it was a legal estate.
The twelfth section of the Statute of Frauds embraces every interest, pur autre vie, which is technically called an “ estate.” The first branch of the section makes “ any” such estate devisable; the second branch, equally comprehensive and providing for all cases where no such devise thereof is made, constitutes such undevised estates assets in the hands of the heir, if it shall come to him as special occupant; and, if there is no special occupant, directs that “ it shall go to the executors or administrators of the party that had the estate thereof by virtue of the grant, and shall be assets in their hands.” It was an unreasonable cramping of this section, enacted “ for the amendment of the law,” to restrict its general words to cases where there could be a special occupant. Perhaps it was fair to say that the enactment contemplated no special occupant besides the heir, and the construction, adopted after much conflict, is now received as sound, which holds that, where there was neither devise nor special occupant, the estate in hereditaments, corporeal or incorporeal, went, under the section, to the executor or administrator. Bearparke vs. Hutchison, 7 Bing. 178, A. D. 1830; Doe vs. Lewis, 9 Mees. & Wels. 662, A. D. 1842; Rawlinson vs. Montague, A. D. 1710, note D, 3 P. Wms. 262; Campbell vs. Sandys, 1 Scho. & Lef. 289, A. D. 1803.
No other legislation is required for this case. The above-mentioned statute of 1 Yict. repealed all previous statutes *484 concerning wills, and presented a well-digested system on the subject. It specially mentions incorporeal hereditaments, as it does other matters upon which there had been diversity of opinion; but, before it was passed, the decision last cited had settled, beyond all reasonable doubt, that estates pur autre vie in incorporeal hereditaments were embraced by the twelfth section of the Statute of Frauds.
It is objected, however, that the Statute of Frauds makes an estate pur autre vie, in the hands of either heir or executor, “ assets” only, and that, where such estate goes to an executor, he may, after payment of debts, wheresoever no such statute as that of 14 Geo. II. before cited is of force, appropriate to himself the surplus, without accountability to legatees or next of kin. If this is'so, the executor’s right to take is not thereby affected. Nothing in this appeal requires us to adjudge matters between the executors of John Peter Richardson and persons who may claim an account from them. We presume that the decree in favor of those executors proceeded upon the ground, apparent to the Chancellor, that the estate pur autre vie which their testator had, was not devised by him and is included in a residue not disposed of by his will. It may not, however, be amiss to remove all impression, which our remarks might otherwise make, that any doubt is entertained in this Court about the accountability of John Peter Richardson’s executors for all that they may receive from the estate pur autre vie.
The doubt raised by the case of Oldham vs. Pickering, 2 Salk. 466, A. D. 1696, which gave occasion for the declaratory statute of Geo. II. before mentioned, probably never reached the Province of South Carolina. Later cases would, it seems, have removed the doubt in England, if that statute had never been passed. See Ripley vs. Waterworth, 7 Ves. 424; Devon vs. Atkins, 2 P. Wms. 381, A. D. 1726; Devon vs. Kinton, 2 Vern. 719. Certainly, there, an executor, however he may have been privileged in the Ecclesiastical Courts, would, in *485 chancery, have been held to make distribution of an estate pur autre vie, which, without devise, came to him under the Statute of Frauds. Witter vs. Witter, 3 P. Wms. 100, A. D. 1730, and cases before cited. At some very early period in the colonial history of this State, in some way, there was an abrogation of the English law which permitted an executor to appropriate to his own use the surplus of the residue of ■his testator’s goods, where no implication of a contrary intention on the part of the testator was discoverable. See Taylor vs. Taylor, 1 Rich. 571; Purvis vs. Cobb, 5 Rich. Eq. 469; Lindsay vs. Say, 1 Des. 150. How the change was made it is not easy now to ascertain. Perhaps it may have come from the Act of 1745, 3 Stat. 666, the allowance of commissions having probably been regarded as equivalent to an adequate' legacy to ■ the executor, which latter was in England considered a sufficient indication of the testator’s intention to deprive the executor of the surplus. But of that Act (which is copied from Grimke’s P. L., because the original was lost before the Statutes at Large were published) several sections are omitted, and the preamble refers to practice concerning returns to the office of the Secretary of State, about which no previous legislative provision is now extant. Of many older Acts we have had for the last century nothing but the titles, and it is not unlikely that the Act of 1745 recognized, rather than established, the accountability of an executor, as of an administrator, for every portion of the testator’s property which came to his hands. However this may be, and whatever may have been the origin of our rule which enforces an executor’s accountability, the rule is general, and would no doubt apply here to the surplus of an estate pur autre vie, even had it been decided that, for that an executor would not in England be held accountable, if only the Statute o^ Frauds there modified the common law. Late statutes have there made an executor accountable for every surplus, as the *486 Stat. of Geo. II. had before done in respect to the surplus of an estate pur autre vie.
The motion is. dismissed.
Dunkin', G. J., and Inglis, J., concurred.

Appeal dismissed.